# Reed *against* Lawton.

In an action by one constable against another, to recover the price of goods sold on an execution by the one, which had been previously levied by the other, it is competent for the defendant to prove that the suit was being prosecuted by and for the use of the plaintiff, in the judgment upon which the execution issued which was first levied, and that that judgment was given for the purpose of defrauding the defendant's creditors, who were the real defendants in the action trying.

ERROR to the common pleas of *Cumberland* county.

This was an action of *assumpsit*, in which Robert Lawton was plaintiff and James Reed was defendant.

On the 23d of February 1833, James Clark obtained a judgment on the docket of Esquire Ramsey against William Harman, by the confession of the defendant, for 270 dollars. On the same day execution was issued to Robert Lawton, constable, which was levied on part of the defendant's personal property, and the next day, the 24th, it was levied on the residue.

On the 23d, 24th and 25th of February 1833, judgments were obtained in favour of different individuals upon the docket of John Blean, Esquire, against the same William Harman, upon which executions were issued to James Reed, constable, which were also levied upon the property of the defendant, but subsequently to the levy of Robert Lawton. The plaintiffs in the executions to James Reed insisted upon his removing the property and indemnified him for so doing. He did remove it and sold it by virtue of his executions, and on the day of sale, and before he was notified by Lawton not to sell the property, that he (Lawton) claimed it on his executions.

The property sold for 150 dollars, and Reed paid the same over to the plaintiffs in the executions. After this Lawton gave notice, in writing, to Reed, that he claimed the proceeds of sale, and they not having been paid to him he brought this suit.

Upon the trial of the cause, the defendant offered to prove that Robert Lawton had no interest in the result of this suit, that it was brought by James Clark in his name, and that Robert Lawton had acknowledged that fact. That the judgment confessed by William Harman was fraudulent; that the money was not due by Harman to Clark; and that it was confessed for the purpose of getting an execution to levy on his (Harman's) personal property to defraud his creditors. That although Lawton was not a party to the fraud, he was the instrument by which the fraudulent contrivance was carried into effect.

This evidence was objected to on the ground, that the validity of the judgment could not be thus collaterally inquired into.

[Reed v. Lawton.]

The court sustained the objection and sealed a bill of exceptions at the instance of the defendant.

The defendant's counsel requested the court to instruct the jury, that the facts given in evidence would not warrant a recovery by Lawton from Reed: that a demand by Lawton from Reed, of a copy of his warrant or execution upon which he made the levy and sale, was essential to his right to recovery.

The court answered both points negatively; and instructed the jury in substance thus—" Lawton, by his levy, acquired such a special property in the goods, as would enable him to maintain trespass or trover against one who took them subsequently—and that the rule was universally true, that where trover or trespass may be maintained, the plaintiff may waive the *tort* and recover in *assumpsit.*"

To which opinion the defendant excepted and the court sealed a second bill.

Errors.  1. The court erred in rejecting the evidence mentioned in the bill of exceptions.

2. In their answers to defendant's points.

*Watts*, for plaintiff in error.
*Biddle* and *Alexander*, for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—Had the legislature provided a specific means of individual redress in cases like the present, it could alone be employed, however inconvenient or inefficient it might be found in practice.  But it seems the object of the statutory remedy was to secure to the contesting creditors the right of a trial by jury where legislative provision was supposed necessary for that purpose; and if that be so, the provision is inapplicable to cases where a trial by jury is to be had in the regular course, because however these may seem to fall within the letter, they are not within the intent of the enactment.  That such was the object appears by the nature of the jurisdiction created, and the incidents that would otherwise have attended it.  Justices of the peace were empowered to take cognizance, with the consent of parties voluntarily appearing, of demands to an unlimited amount, and to give judgment without appeal; but it was not intended that the jurisdiction thus permitted should draw after it adverse and final jurisdiction of collateral matters, as it would perhaps have done in regard to the liability of a constable for having suffered goods levied by him to be taken by a subsequent execution on the allegation of a superior title, or by the allegation of fraud, and consequent want of all title under the judgment on which the execution in his hands was issued.  An action for the proceeds of the goods sold under these circumstances, seems to be the proper remedy between conflicting creditors, as in Lewis *v.* Smith, 2 *Serg.*

[Reed v. Lawton.]

*& Rawle* 142; in which the validity of the judgment under which the plaintiff claims, may be put in issue, as it was here, by the plea of *per fraudem.* But this plea, it is said, can not be tried in the action in which it is pleaded, because the legislature has directed it to be tried in a collateral proceeding, to which alone the injured party can have recourse. What is this proceeding? A proper ground being laid, the justice is directed to send a transcript of the judgment to the common pleas, in order to found a final adjudication of the question of fraud by that court; "and if, on the trial of the cause it shall be found that the sum for which judgment was confessed, was not actually due at the time, both parties, if both shall have been privy to the fraud, shall pay *a fine* equal to the amount of such fraudulent judgment, or in case of inability to pay such fine and costs, shall be imprisoned for any time not exceeding six months." This, then, is not a remedy to compensate the injured, but to punish the guilty; the only consequence of the conviction in a civil view being, that it may perhaps be given in evidence in any subsequent proceeding or action as conclusive of the imputed fraud. But was it intended that no one should impeach such a judgment in a civil action who had not first prosecuted the perpetrator of the fraud to conviction? The injustice of that in the case of a fraud discovered in the progress of a trial, in which it might be material to expose it, is too obvious to need remark. In such a case what would be done? It would scarce be thought to consist with convenience or despatch, to suspend the trial, and await the event of a collateral issue, for the determination of a matter which may just as well be determined in the action in which it has been put in issue by the pleadings. But suppose the trial to proceed and a recovery to be had from the creditor alleging the fraud, by reason of his being debarred from giving evidence of it—would a subsequent prosecution of the offending party to conviction bring him his money back? The judicious doubt of chief justice Eyre in Phillips *v.* Hunter's Executors, 2 *H. B.* 414, in relation to the point decided in Moses *v.* M'Farlane, 2 *Burr.* 1005, seems to have ripened into universal conviction, that money recovered by the judgment of any court, whether competent to enter into the merits of the case or not, cannot be regained by action. As then the section in question gives the fair execution creditor no remedy, he is not to be prejudiced by it in relation to his redress at the common law. But the exact point is said to have been differently decided in M'Cormick *v.* Miller, 3 *Penns. Rep.* 230. It will be perceived, however, that the point there was not decided on the provisions of this section, which has regard to judgments but for an amount beyond the ordinary jurisdiction of the justice, and there the suit was originated by process. Besides, the judgment, though surreptitious, was not fraudulent, having been rendered for an actual debt; and though erroneous, it was good till reversed. It appears, therefore, that the evidence should have been received.

Judgment reversed and a *venire de novo* awarded.